MILLIE JONES *et al.*

*v.*

MATILDA JONES *et al.*

*Opinion filed December 22, 1904.*

1. DEEDS—*grantor's children cannot avoid his deed for grantor's own improper acts.* Children of a grantor can avoid his deed by showing it was obtained by fraudulent practices or undue influence of the grantee, but neither the grantor nor those in privity of estate with him can set aside his deed upon the ground that such grantor acted fraudulently.

2. SAME—*services rendered by grantee constitute legal consideration.* Services rendered by the grantee to the grantor in keeping house and caring for his children constitute a legal consideration for the deed.

3. SAME—*when a conveyance is not in fraud of rights of prospective wife.* A conveyance shortly before the grantor's marriage cannot be deemed in fraud of the rights of the prospective wife, where it was based upon a fair consideration.

4. SAME—*voluntary conveyance may not be in fraud of rights of prospective wife.* A voluntary conveyance from a parent to child, shortly before the grantor's re-marriage, is not necessarily in fraud of the dower rights of the prospective wife, if there was no actual intention to defraud and the grantor still has a reasonable amount of property.

5. HOMESTEAD—*test of a homestead right.* Before the right of homestead can attach, the person through whom the right is claimed must have had such an interest in the property at the time of his death as could be sold on execution to pay his debts.

6. SAME—*wife acquires no homestead in land held by husband as a tenant at will.* If, after the delivery of a deed to land to his daughter without restriction or reservation, the grantor re-occupies the land and remains thereon as a tenant at will, his wife acquires no homestead rights in the land, even though he puts improvements on the property.

7. LIMITATIONS—*what cannot be relied upon as color of title.* A deed to the grantor purporting to re-invest him with title to land after he has conveyed the same, by a general warranty deed, to another person, inures to the benefit of the latter, and cannot be relied upon by the grantor, or any person claiming in privity with his estate, as color of title.

8. WITNESSES—*when the co-defendants are competent witnesses.* The fact that certain brothers and sisters of the defendant to a bill by the widow and heirs to set aside a deed are made co-defendants does not prevent their testifying as witnesses for their co-defendant if their interests are in fact identical with those of the complainants and adverse to those of their co-defendant.

APPEAL from the Circuit Court of Wayne county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

ORGAN & ELLIOTT, for appellants.

JOHN R. HOLT, and WILLIAM T. BONHAM, for appellees.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

A bill in chancery for partition and assignment of dower and homestead was exhibited in the circuit court of Wayne county by Millie Jones, Mabel Jones and Sarah Jones, (the latter two being minors and appearing by next friend,) against Matilda Jones, George C. Jones, Lewis S. Jones, William D. Jones, John A. Jones, Jane Riggs and Mary Scott, and to set aside two certain deeds made by John G. Jones to said Mary Scott.

The bill alleges that John G. Jones died November 19, 1902, seized of the east half of the north-west quarter of section 24, township 1, north, range 9, east of the third principal meridian, and other lands; that the land above specifically described was the homestead of said decedent at the time of his death, and that he derived title to said homestead tract by purchase, and by open, notorious, exclusive, continued, actual possession as the homestead of himself and family and claiming to be the owner thereof, and the payment of taxes for seven years and by possession for twenty years; and further alleging that after the death of the decedent the defendant Mary Scott placed of record two deeds purporting to convey to her the said tract of land in controversy, alleging that said deeds were never delivered by the grantor

in his lifetime and that no consideration was given for them, and that they were fraudulent and void and a cloud upon the title of said decedent and his legal heirs; avers that each of the heirs, parties complainant and defendant to the suit, is entitled to a one-ninth interest in the lands, subject to the dower and homestead rights of Millie Jones, the widow; that after the making of said deeds the said grantor for many years continued to occupy said lands and used and treated the same as his own and made lasting and valuable improvements thereon, and that shortly after the making of the last of said deeds, dated October 2, 1886, he married appellant Millie Jones; that he secretly withheld from her the knowledge that such deeds were made, and that said last named deed was a fraud upon her rights.

All of the defendants to the bill except Mary Scott defaulted. Mary Scott answered the bill, denying that her father, John G. Jones, died seized of the tract of land particularly described hereinabove, and which is the only land in controversy in this proceeding, and averring that at the time of his death she was the owner in fee of said land; that the deeds were regularly made and delivered to her, and that the consideration therefor was her personal services rendered to the grantor, as his house-keeper, for seven years between the time of the death of his second wife, in 1879, and the marriage to appellant Millie Jones, and also the educating, rearing and clothing the children of the said grantor after his marriage to the said Millie Jones; that appellant Millie Jones knew, at the time of her marriage, that said John G. Jones did not claim title to the lands in question, and that at that time he had his homestead on other lands which were actually occupied by him and which were afterwards traded for a mill, in the conveyance of which appellant Millie Jones joined, and that said mill property was afterwards traded for a large amount of lands in the State of Kansas, and denying all manner of unlawful combination, confederacy or fraud.

To this answer replication was filed, and the cause was heard in open court before the chancellor, who entered a decree finding the title to the property in controversy in Mary Scott, and dismissed the bill as to that tract and decreed partition and the assignment of dower as to the remainder of the property. From this decree complainants below prosecute this appeal, and insist that the decree is contrary to the evidence and that the court admitted improper evidence.

It appears from the evidence that the decedent, John G. Jones, was married three times and had children by each wife; that appellee Mary Scott was a child of his first wife and that there were other children of that wife; that said Mary Scott had been married to one Phelps, and was a widow on January 31, 1879, the date of the death of the second wife of her father; that at that time decedent owned a number of tracts of land; that by the death of his second wife the decedent was left with some four or five minor children; that one of these was a little boy, George, about three years of age, another a daughter, Tillie, who was six years of age, and there were two sons, John and William, who were still older, there being five children at home with the father besides appellee Mary Scott; that Mary Scott, upon the death of the mother, became his house-keeper and kept house for him for seven years or over, and until his marriage with appellant Millie Jones. On the 17th of February, 1879, and shortly after the death of his second wife, decedent gave to Mary Scott, duly executed and acknowledged, a warranty deed for the south forty acres of the tract in question. At that time Mary Scott had a horse and some little personal property, which were sold, and with the proceeds and money belonging to decedent, during the year 1879 a house was built upon this forty acres that had been deeded to her, and the decedent and said Mary and the children moved into this new house and occupied it until 1885, when it burned down, and they then moved on to a farm of the decedent known

as the Fishel place, where they remained until the decedent married appellant Millie Jones, on November 7, 1886. On October 24, 1886, the decedent made and delivered to Mary Scott, by the name of Mary E. Phelps, her then name, a deed to the north forty acres of land, which was about two weeks prior to his marriage with appellant Millie. The latter had three children by a former marriage, and for reasons that seemed sufficient to the decedent he arranged with Mary Scott to take his two smaller children, George and Tillie, to the little town of Mount Erie, within two or three miles of the farm, and rear them, and she did take these two children and took possession of an old dilapidated house on a town lot in that village and with her own means and earnings fixed up the house, and kept, clothed, fed and schooled these two children, and a considerable portion of the time kept one or both of the older sons of the decedent. The daughter Tillie was in delicate health and could not work, and was given not only an education in the ordinary branches, but was given a musical education. It is also shown that at various times Mary Scott paid money to creditors of her father and loaned and gave him money for various purposes. Soon after his death she placed the deeds of record. A number of years before his death, having traded his other lands for a mill, the decedent moved on to the lands of Mary Scott and occupied them with his family until the time of his death. He seems to have received all the rents or income from the lands and to have paid the taxes and put certain improvements on them, namely, a house worth $150, a barn worth $300, a granary worth $50 and $12 worth of fence, and did some clearing upon the land. That was the extent of the improvements, as appears from the evidence, made by him during the time he occupied it, which was some eight years. The south forty is shown to have been of the value of about $600 at the time of the conveyance of it. We are unable to determine from the record the value of the north forty at the time of the conveyance of it, in 1886. Both deeds

are general warranty deeds, and the one to the south forty states a consideration of $500 and the one for the north forty states a consideration of $600. There is no evidence in the record as to the value of the lands retained by the decedent at the time of his marriage, although the evidence shows that he owned two or three other tracts of land.

With reference to the rights of the children of the decedent, it may be said that they could only set aside these deeds by showing that they were obtained by the fraudulent practices or undue influence of appellee Mary Scott; that she in some manner took advantage of the grantor and thereby induced and obtained the deeds. So far as they are concerned, they are neither purchasers nor creditors of decedent, and he could, as to them, make a voluntary conveyance of all his property to any person he pleased. It is a well established rule that neither the grantor nor those in privity in estate with him can set aside deeds made by him where he acts fraudulently. Nor is there any evidence in this record,—not even the slightest,—that appellee Mary Scott obtained the deeds of which she is in possession through any fraud or fraudulent practice. All the children of the decedent that were old enough to know anything about his affairs knew and understood that the property in question was the property of Mary Scott. It is not even attempted to show that as to the grantor Mary Scott practiced any fraud or exercised any undue influence in obtaining the deeds, but, on the contrary, the decedent stated to various persons that he had made the deeds to her and for the purpose of compensating her for the services she had rendered him. These services are shown to have been worth from three dollars to three dollars and a half per week for the seven and one-half years between the death of decedent's second wife and his marriage to appellant Millie Jones, and the care, custody and support of each of the children during their minority, and for which he was liable, except through the arrangements he made with Mary Scott, are shown to have been worth from

two dollars to three dollars per week, so that, so far as the value, as shown by the consideration expressed in the deeds or any evidence *aliunde,* is concerned, the decedent received full value for these two tracts of land. We have, then, the conveyances for a legal and substantial consideration.

If the conveyances were purely voluntary and without any consideration and for the sole purpose of vesting the title to the property in the appellee Mary Scott, no one concerned in this litigation could complain except the widow, Millie, and she could only complain as to the north forty, which was conveyed shortly before her marriage to decedent; and before she can complain or before the sale can be set aside simply upon the ground that the conveyance was made close to the time of her marriage, it must reasonably appear from the evidence that the conveyance was made in fraud of her rights. Such a conveyance cannot be deemed to be in fraud of the rights of the prospective wife where a fair consideration is shown to have been paid for the conveyance, because if the prospective husband, who conveys, receives the value of the property conveyed, the wife has lost nothing, as he still has its representation in money or money's worth. Moreover, we think it was incumbent upon the appellant Millie Jones to show, that, taking into consideration the entire estate of the decedent at the time of the marriage, the conveyance of this property was prejudicial to her rights. She has not done this. Although the record discloses other property in the decedent at the time of the marriage, she has made no effort to show the value of it or its extent, and, failing to show any express fraud, the implication of fraud, or the fraud that arises, in law, from the mere conveyance, will not be presumed by simply proving the conveyance to a child, which he might properly do if it did not seriously deplete his estate. (*Daniher* v. *Daniher,* 201 Ill. 489.) But, as we have said, we think there was a sufficient consideration, and that this case does not depend wholly upon the failure of appellant Millie Jones to show that by this

conveyance the estate of the decedent was materially lessened or affected to her injury. The law also recognizes that children are the natural objects of the bounty of the parent, and a conveyance from a father to his child, where he has reasonable property remaining so that the rights of the wife arising from her inchoate dower will not be prejudiced thereby, is not a fraud upon her rights. (*Daniher* v. *Daniher, supra.*) Of course, if the evidence showed that the conveyance was for the purpose of defrauding the wife and that the grantee in the conveyance accepted it with this understanding, a different question, so far as the widow is concerned, would be presented, but there is not the slightest evidence in this record tending to show any such state of case.

As has been stated, the house in which decedent died was located on the south forty, which was the tract that was conveyed in 1879. It is insisted now that appellant Millie Jones and her children have a homestead right in the land. We think not. She could not, it seems to us, obtain the homestead right or the homestead estate in land that did not belong to the husband and that was held by him as a tenant at will and in which he had no right of homestead. By the delivery of the deed to appellee Mary Scott, without any restrictions or reservations in it, she became entitled to the possession *eo instanti*. If decedent occupied the premises other than by her mere consent there is nothing in this record to show it, and as he does not appear to have had any lease for any of the time, he would be, under such state of facts, a mere tenant at will. The fact that he put certain improvements on this property, amounting to about $500 in eight or more years' occupancy of it, does not vest the title in him nor does it give to appellants a homestead in the property. The test seems to be, that before the right of homestead can attach, the husband, or person through whom the right is claimed, must have had such an interest in the property at the time of his death as could be sold on execution to pay his debts.

(15 Am. & Eng. Ency. of Law,—2d ed.—556; *Deere* v. *Chapman*, 25 Ill. 498; *Conklin* v. *Foster*, 57 id. 104.) If this test be applied, it is clear that the decedent had no such estate in the property in question as that the homestead could attach to it.

The contention that the Statute of Limitations has run and that the decedent had a title adverse to appellee Mary Scott by virtue of possession is not supported by the evidence. There is no evidence that he occupied the land, or any part of it, for twenty years after these conveyances. The south forty, which was occupied by Mary Scott and her father, was vacated in 1885, when the house burned, and he moved to other lands. At that time Mary Scott was in possession with him, and it cannot be said that he was then holding hostile to her rights. Since that time twenty years have not elapsed, and as the deed of 1886 was made less than twenty years ago, of course the supposed twenty years' possession could not be urged in that case.

It is said, however, that in 1875 decedent conveyed this land to one of his sons, John R. Jones, and that in 1880 John R. Jones re-conveyed the same property to the decedent, and that thereby he acquired color of title and paid taxes under the same for seven years. Both of these conveyances were before the conveyance of the last tract from decedent to appellee Mary Scott, and the conveyance from John R. Jones back to the decedent was after the conveyance by the decedent of the south forty to Mary, and any title received by the decedent after he had made and delivered to her a deed with covenants of general warranty would inure to the benefit of the title he had thus made, and such conveyance could not be relied upon by him as color of title, and cannot be by any person now claiming in privity with his estate.

It is insisted that Mary Scott was not a competent witness. All of the material facts that she testified to, except the delivery of the deeds, were established by other competent evidence. She was in possession of the deeds, and there

is no evidence in the record tending to show that she came in possession of them in any improper way.

The objection that the brothers and sisters of Mary Scott were not competent witnesses as against these appellants is not well taken. Their interests were identical with those of the appellants. If the deeds to Mary Scott were set aside they would share in the division of the estate the same as the appellants, and so far as the questions here under consideration are concerned, their interests were hostile to the interests of Mary Scott. The fact that they were made defendants by appellants does not prevent their testifying for Mary Scott, their co-defendant, if their interests were, in fact, adverse to her interest.

In this case the abstract is not indexed, nor is there an index to the original bill of exceptions contained in the record, and we have been obliged, in order to get any understanding of the case, to give the appellants the benefit of the failure to observe our rule and to assume unnecessary and extended labors on our part. We could have properly, and in many cases, have refused to consider appeals where these requirements are not complied with. We have, however, read the abstract carefully, and the greater portion of the record, to ascertain, if we could, if the trial court had fallen into error prejudicial to these minor appellants, and we are unable to say that the conclusions of the chancellor, who tried the case in open court and saw the witnesses, are against the weight of the evidence, but, rather, are impressed that the decided weight of the evidence is for the appellee Mary Scott.

The decree of the circuit court is affirmed.

*Decree affirmed.*