Robert Prince *et al.* Appellees, *vs.* George R. Prince, Appellant.

*Opinion filed April 19, 1913.*

1. Deeds—*manual delivery not essential to constitute delivery of deed.* While delivery of a deed is necessary to pass title it is not essential that there be an actual manual delivery, as the test of delivery is the intent with which the acts relied upon as equivalent to actual delivery were done, and this intent is to be gathered from the conduct of the parties and all the surrounding circumstances.

2. Same—*when deed will be regarded as delivered.* Where the grantor executes a deed to his son during the latter's absence in a foreign State, reserving a life estate in the grantor and his wife, and the grantor at the same time causes a receipt in the same amount as the consideration named in the deed to be prepared as being in full of all claims of the son against the grantor for wages or otherwise, which receipt he has the son sign upon his return, it must be held, in the absence of clear proof to the contrary, that

the grantor intended the deed to presently pass title, even though he subsequently claims that the deed was recorded without his knowledge or consent by the third party having its custody and it is shown that the grantee never had manual possession thereof.

APPEAL from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding.

ANDERSON & ANDREWS, for appellant.

JOHN T. CUMMINGS, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This action was begun by appellees, who were complainants in the court below, filing a bill in chancery at the November, 1910, term of the circuit court of Henry county against appellant, defendant below, to set aside as a cloud upon their title a certain deed of conveyance made and executed by them on September 5, 1908, purporting to convey to appellant, subject to a life estate reserved to complainants and the survivor of them, the following described real estate: The south-east quarter of the south-east quarter of section 25, the north-west quarter of the south-east quarter of section 25, and the north-east quarter of the south-east quarter of section 36, all in township 16, north, range 5, east of the fourth principal meridian, in Henry county, Illinois.

Appellees, Robert Prince and Dell Prince, are husband and wife, and appellant is the son of Robert Prince by a former marriage. Robert Prince had another son, named Oscar, and three daughters, by said former marriage but no children by his present wife, Dell Prince. Several years before the deed sought to be set aside was made, Oscar Prince left home and never thereafter lived with or rendered any services for his parents. Appellant lived with his father and worked on his father's farm which is the subject of this litigation, until about the fall of 1909, when

258 — 20

the father and the appellant rented land in South Dakota. Appellant went up there in the fall or winter of 1909 and appellees in March following. They farmed and lived together until some time in June, 1910, when they became estranged over some disagreement. Appellant testified it was on account of a girl he proposed to and did afterwards marry, while the father testified it was about their farming operations. They never became reconciled afterwards, and in October, 1910, appellees filed the bill to set aside the deed.

The bill alleged that appellant had contributed considerable time, energy and industry to the welfare of appellees, and with the view of properly rewarding him for his labor and services, and upon condition that during the life of appellee Robert Prince he should continue to assist them with the work upon the farm, and on account of the ill-health of appellee Robert Prince, the deed was signed and acknowledged and left with a third party to hold until such time as appellees saw fit to deliver it or have it delivered; that said instrument was left in the custody of Charles E. Sturtz, the lawyer who drew it and before whom it was acknowledged, with instructions to keep it in his custody and not to deliver it without the order and consent of appellee Robert Prince. The bill alleges that the deed was inadvertently and without the knowledge or consent of appellee Robert Prince, and contrary to his intention, filed for record by one Ewan, the law partner of Sturtz, but who was a clerk in the office of Sturtz at the time the deed was executed. The bill further alleged that there was no consideration for the deed; that the expressed consideration therein of $1750 was wholly fictitious; that upon the deed being recorded it was returned to Sturtz & Ewan and still remained in their custody, subject to the control and disposition of appellee Robert Prince, and that it was never intended that said deed should be delivered or take effect by the recording of it. The bill further alleged that shortly after said deed was executed appellant left the home of ap-

pellees and has failed and refused to live with them or to contribute to their support and welfare by his labor and services. The prayer is that the deed be set aside as a cloud upon appellees' title. The answer averred that the conveyance was made to appellant in settlement of services rendered appellees by appellant and that the consideration named in the deed was the amount determined upon as the amount due appellant, and as a part of the transaction the answer sets out *in hæc verba* a receipt to Robert Prince for $1750, which was prepared by direction of appellee Robert Prince by Sturtz, who prepared the deed and at the same time the deed was prepared. The answer avers that there was a delivery of the deed, and that by reason of the recitals in the receipt appellees are estopped from claiming that the deed has never been delivered. After replication filed the cause was referred to the master in chancery to take the proof and report his conclusions of law and fact. The master found in his report that there was a delivery of the deed by which title passed to appellant, and recommended that the bill be dismissed for want of equity. Objections to this report by appellees were overruled by the master and were renewed as exceptions before the chancellor. The chancellor sustained the exceptions, disapproved the master's findings and entered a decree granting the relief prayed in the bill. From that decree defendant below has prosecuted this appeal.

It is not disputed that appellant remained with appellees and worked on the farm for about nine years after he became twenty-one years old. During at least a part of that time his father was in ill-health and unable to do a great amount of work. Appellees recognized in their bill that he devoted considerable time, energy and industry for their welfare and benefit, and that when they made the deed they had in view the purpose and object of rewarding him for the services he had rendered and might thereafter render them if he continued to live with them during the life of

appellee Robert Prince. Appellees in their testimony deny that they ever promised appellant any reward for his services, but Mrs. Prince admitted that they had told him if he would stay with them they would favor him with their property after their deaths. Appellant testified that the subject was talked of between the parties a number of times,— once about the time Oscar left home and again afterwards. We think it very clear from the evidence that appellees regarded themselves as under obligations to appellant to recompense him for services rendered them after appellant was twenty-one years of age and that it was understood between all the parties that this should be done. It was in furtherance of this understanding and purpose that the deed was made. That instrument purported to convey the fee of the land to appellant but reserved a life estate in it to appellees or the survivor of them. The grantee was not to come into possession until both appellees were dead. This was in accordance with the understanding between the parties, testified to by appellant and in a measure corroborated by the testimony of Mrs. Prince.

While appellees deny there was any agreement to recompense appellant for his services they do not deny that he claimed the right to be recompensed, and they do not claim to have ever told him that they had no intention of doing so. If they had never said anything to him except the statement testified to by Mrs. Prince he might well have understood that they intended rewarding him with their property after their deaths. The deed was made when appellant was away from home and without his knowledge. It does not appear that he had ever asked appellees to make the deed but up to that time had relied upon the carrying out, in good faith, of what he claimed was understood and agreed upon between him and appellees. Appellees went to the office of Sturtz, a lawyer in Kewanee, who under their instruction prepared the deed. They signed and acknowledged it at that time before him. This was Septem-

ber 5, 1908, and at that time appellant was in South Dakota. At the same time Sturtz, at the direction of appellees, prepared the following instrument:

"KEWANEE, ILL., *Sept. 5, 1908.*

"I hereby acknowledge that I have received from Robert Prince the sum of seventeen hundred and fifty ($1750) dollars, the same being the consideration mentioned in a deed made on the above mentioned date, whereby the said Robert Prince and Dell Prince, his wife, as grantors, conveyed and warranted to me the following described premises: The south-east one-quarter (¼) of the south-east one-quarter (¼) of section twenty-five (25); the north-west one-quarter (¼) of the south-east one-quarter (¼) of section twenty-five (25); the north-east one-quarter of the south-east one-quarter (¼) of section thirty-six (36); all in township sixteen (16), north, range five (5), east of the fourth principal meridian, reserving unto themselves a life estate in the same. The above amount is in full settlement, up to date, of all claims and demands for wages and every other thing whatsoever I have against the said Robert Prince.      GEO. R. PRINCE."

This instrument and the deed were both left with Sturtz. Afterwards appellant returned to Illinois and his father requested him to go with him to the office of Sturtz, in Kewanee. Sturtz was not in his office, but Ewan, then his clerk but now his partner, was, and at the request of Robert Prince Ewan brought the paper mentioned, which we will call a receipt, to Robert Prince. The receipt was there read to appellant by Ewan, or appellant read it himself, and then signed it. This was about September 26, 1908. There is a conflict in the testimony as to what was said and done at the time this paper was signed. Appellant testified that the deed was produced and talked about; that his father handed it to him and that it was given back to Ewan to have it recorded. Robert Prince and Ewan denied that the deed was produced at that time or that there was any talk about recording it. Robert Prince testified the deed was talked about at the time; that he told appellant to sign the receipt after Ewan had read it to him, and said that when his (Robert Prince's) will was probated the deed would be

appellant's.  He testified he made a will at the same time
he made the deed.  He testified he left the deed, his will
and the receipt with Sturtz on the day the deed and will
were executed, with directions to him to take care of all
the papers until his will was probated, and that nothing was
said about recording the deed.  Mrs. Prince testified her
husband told Sturtz to keep the deed; that she did not
remember whether anything was said about recording it.
Sturtz testified Robert Prince told him to keep the papers
until he called for them; that he wanted his wife protected
against any trouble that might arise between her and his
children after his death.  Ewan testified that he was in an-
other room, but he heard Robert Prince tell Sturtz to take
care of the papers until he called for them.  He testified
that he took the deed to the county seat and filed it for
record.  His testimony does not make it very clear why the
deed was recorded in the absence of instructions.  He said
he knew what the instrument was when he filed it, but that
it was not done with the knowledge or by the direction of
Sturtz or anyone else.  Sturtz and Ewan did not appear as
counsel for appellees in this case.  They, especially Sturtz,
had previously been their attorneys, and after the trouble
with appellant Robert Prince corresponded with them about
setting aside the deed.  They advised with him upon that
subject, and, as we understand the testimony, it was through
their suggestion that he employed counsel who tried the case.
Robert Prince testified he "paid some money to Sturtz &
Ewan on this case."  He further testified that he believed
he had a conversation with present counsel in this case with
regard to filing the bill before it was prepared and signed
by him.

The question then is whether, under all the circum-
stances, the fee, subject to the life estate of the grantors,
vested in the grantee.  If what was said and done had that
effect the conveyance should not be set aside.  If the deci-
sion of that question depended upon the testimony as to

whether there was a manual delivery of the instrument on September 26, when the receipt was signed, it would probably not justify finding that the title passed by the deed. While delivery is necessary to pass title, it is not necessary that there should be actual manual delivery of the deed. The test of delivery is the intent with which the acts relied upon as the equivalent of actual delivery were done, and this intent is to be gathered from the conduct of the parties and all the surrounding circumstances. "The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is the act of the grantor, indicated either by acts or words, or both, which shows an intention on his part to perfect the transaction by a surrender of the instrument to the grantee or to some third person for his use and benefit. The whole object of a delivery is to indicate an intent upon the part of the grantor to give effect to the instrument. It is not necessary to pursue any particular course to effect a valid delivery of a deed. It is sufficient that a grantor intends, when executing a deed, to be understood as delivering it. * * * The question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed. 'The doctrine seems to be settled beyond a reasonable doubt,' remarks Justice Atwater, 'that where a party executes and acknowledges a deed, and afterwards, either by acts or words, expresses his will that the same is for the use of the grantee, especially where the assent of the grantee appears to the transaction, it shall be sufficient to convey the estate though the deed remains in the hands of the grantor. * * * The main thing which the law looks at is whether the grantor indicates his will that the instrument should pass into the possession of the grantee, and if that will is manifest then the conveyance inures as a valid grant, although, as above stated, the

deed never comes into the hands of the grantee.' " (Devlin on Deeds, secs. 260-262.)

In *Riegel* v. *Riegel,* 243 Ill. 626, it was said: "No particular form or ceremony is necessary to constitute such delivery. It may be by acts without words, or words without acts, or both. Anything which clearly manifests the intention of the grantor that the deed shall presently become operative and effectual, that the grantor loses all control over it and that the grantee is to become possessed of the estate, constitutes a sufficient delivery. In the case of a deed which is a voluntary settlement the law presumes much more in favor of a delivery than it does in ordinary cases of deeds of bargain and sale, and this presumption is especially strong when the grantee is an infant." This rule will be found reiterated in many decisions. The rule as to what constitutes a delivery is not so strict in cases of voluntary settlements fairly made as in cases of bargain and sale. *Baker* v. *Hall,* 214 Ill. 364.

Conceding that in this case there was no manual delivery of the deed to the grantee, do the facts and circumstances proven show that the grantors intended at the time to divest themselves of the title and to vest it in the grantee, and were such acts and conduct equivalent to a delivery? Appellees testified they knew appellant claimed to be entitled to be rewarded for the services he rendered them after he was twenty-one years old, and while Robert Prince denied there was any understanding or agreement that this should be done, we think the evidence justifies the conclusion that the matter had been talked over between the parties to the extent that there was some understanding that appellant should receive his reward in property of his parents after their deaths. Appellees testified that their reasons for making the deed and procuring appellant to sign the receipt were, that they knew he contemplated claiming compensation for services rendered by him after attaining his majority, and that Robert Prince desired to so arrange

matters that appellant could not disturb Mrs. Prince if she survived her husband. As a part of the transaction appellees considered it necessary to procure from appellant a release and discharge of all claims or demands he had for wages, or of any other kind, against Robert Prince. The amount named in the receipt is the same amount as the consideration expressed in the deed, and this is so recited in the receipt. That amount was fixed and determined upon by Robert Prince without any consultation with appellant. The receipt acknowledges the payment to appellant of $1750 by the execution of a deed to him by appellees for the land in controversy, which is described in the receipt, the grantors reserving to themselves a life estate in the premises, and that it is in full settlement, to date, of all claims and demands for wages and every other thing whatsoever which the appellant had against appellee Robert Prince. It is difficult to understand appellees' purpose in requiring appellant to execute this receipt, and why he was expected and required to execute it, when he was receiving nothing for it. If no title or interest was intended to pass to or vest in appellant by the deed and it was to remain in the custody and under the control of appellees, it would seem appellant's position was not greatly improved by the mere fact that a deed had been made which gave him no present interest in the property and which was subject at any time to be destroyed. Appellees intended to relieve themselves, and thought they had relieved themselves, of any obligation to appellant by reason of his claim for years of service for their benefit, during which time he had, in addition to contributing to the support of the family, materially assisted in the payment of all or a greater portion of a mortgage debt of $3000 against the farm. True, they denied any obligation on that account, but this denial is overcome by the proof of their acts and conduct, as we have before stated. The receipt itself clearly shows their recognition of the fact that appellant claimed compensation,

and expected to be compensated, for his services. That this compensation was to be made by giving appellant the property of appellees upon their deaths was talked of between the parties. If appellees' contention be correct, then they relieved themselves of any obligation to appellant without giving him anything in return therefor, and the property was left under their control, to be disposed of as they might desire. Having secured their release from appellant they now say they were never in any way liable to him; that the consideration of $1750 expressed in the deed did not represent any obligation to appellant but was purely fictitious; and they seek to set aside and annul the instrument they executed by which they procured appellant to release his claim, claiming they were not then, and are not now, in any way liable to him on any account. They do not propose to restore him to the same position he was in before he executed the receipt and release, but, in effect, say that having procured it they may now do as they please with the property.

We are satisfied from the evidence that, whether there was any manual delivery of the deed or not, both grantors and grantee intended and understood at the time that it was to vest in the grantee the fee of the land, subject to the life estates reserved in the deed. The deed was recorded two days after the receipt was executed, and the explanation of how it came to. be recorded is not very satisfactory. Appellees knew the deed was recorded for more than a year before they raised any objection, and no objection ever was raised until Robert Prince and appellant had a falling out. That appellees intended and understood the title to the fee was to vest when the deed was executed is indicated by the fact that they reserved a life estate in the premises. "Such a reservation raises a presumption that the deed is intended to operate immediately as a conveyance of the future estate which is to vest in possession at the termination of the life estate, since there would be

no object in reserving a life estate if the deed was not to be effectual as a conveyance or was retained to prevent its taking effect until the death of the grantor." *Hill* v. *Kreiger,* 250 Ill. 408.

In *Martin* v. *Flaharty,* (Mont.) 19 L. R. A. 242, a Mrs. Githens, the owner in fee of real estate, executed a deed to her children and on the same day took back from them a lease of the premises for her natural life and the lease was delivered to her. There was no proof of manual delivery of the deed to the grantees. Some time afterwards Mrs. Githens took the deed and the lease and delivered them to the cashier of a bank. On the outside of the package was written, "To be delivered to Mrs. Githens, and in case of her death to Mrs. Flaharty." Mrs. Flaharty was one of the grantees. Mrs. Githens died a few months later without having called for the papers and without expressing any other directions about them. While the papers were in the bank Mrs. Githens spoke of the deed as the "girls'" deed, saying it was in the bank. She occupied the premises until her death, and when that occurred the grantees in the deed took possession. Her administrator brought suit against them to recover the possession, and upon the question whether there had been such a delivery as to vest title in the grantees the court said: "A deed does not become operative until it is delivered, with the intent that it shall become effective as a conveyance. Whether such intent actually existed is a question of fact to be determined by the circumstances of the case and cannot in the majority of instances be declared as a matter of law. * * * The acts, words and conduct of the parties,—especially the giving of the lease to the demanded premises by the grantees of the deed to the grantor contemporaneously with the execution of the deed and her occupying the premises under said lease until her death,—establish, beyond controversy, that the parties considered the deed complete as well as the delivery thereof."

In our opinion appellees were not entitled, under the evidence, to the relief prayed, and the court erred in decreeing that they were.

The decree is reversed and the cause remanded, with directions to the circuit court to dismiss the bill.

*Reversed and remanded, with directions.*