(No. 29617.—■■■■■■■■

MADELINE M. CREIGHTON, Appellee, *vs.* MARY CREIGHTON ELGIN *et al.*, Appellants.

*Opinion filed Sept. 18, 1946—Rehearing denied November 18, 1946.*

MILLS, UMFLEET & MILLS, of Fairfield, for appellants.

BURGESS, LOY & BURGESS, of Fairfield, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal and a cross appeal from a decree entered by the circuit court of Wayne county, in a partition suit. The suit was filed by appellee, Madeline M. Creighton, for the partition of a tract of land consisting of 340 acres. It was alleged in the complaint that the property was owned, as tenants in common, equally by appellee and Mary Creighton Elgin, subject to an outstanding oil-and-gas lease, the validity of which is stipulated by the parties. The principal defendants named in the suit were Mary Creighton Elgin and Edward W. Creighton. All other defendants are nominal parties. To the complaint the above-named defendants filed an answer in which they denied the allegations of the complaint as to the ownership of the property, and alleged that said defendants were the owners of said property as the only heirs-at-law of Lucretia E. Creighton, deceased. They also filed a counterclaim in which they made the same allegations. By the counterclaim they also alleged that two other parcels of real estate, referred to in the record as the "Crews farm" and the "Poe lot," the titles to which were in the name of John M. Creighton at the time of his death, were held by him in trust for Lucretia E. Creighton, and that defendants Mary Creighton Elgin and Edward W. Creighton were, in fact, the owners of said properties, as heirs of Lucretia E. Creighton, their mother. They asked for a decree finding that title to said Crews farm and said Poe lot was held by John M. Creighton at the time of his death, as trustee, for their use and benefit. A reply was filed to the answer by appellee. By an answer to the

counterclaim, appellee joined issue thereon. A reply was also filed by said defendants to the answer to their counterclaim. The evidence was heard in open court.

The court found the issues on the original complaint in favor of appellee; that the property described in the complaint was owned jointly, one half by appellee, Madeline M. Creighton, and the other half by appellant Mary Creighton Elgin, as tenants in common. Partition of this property was ordered. On the counterclaim, as to the Crews farm, the count found the issues in favor of Madeline M. Creighton, the defendant in the counterclaim. As to said property the counterclaim was dismissed. From those parts of the decree awarding partition on the original complaint and dismissing the counterclaim as to the Crews farm, Mary Creighton Elgin and Edward W. Creighton perfected the appeal.

The court by its decree found the issues on the counterclaim as to the Poe lot in favor of the counterclaimant Edward W. Creighton, and against Madeline M. Creighton, the defendant named therein. It decreed that the title to said lot was held by John M. Creighton at the time of his death, in trust, for the use and benefit of Lucretia E. Creighton and did not pass to Madeline M. Creighton under her husband's will, and that said property now belongs to Edward W. Creighton as devisee under his mother's will. From that part of the decree appellee perfected the cross appeal.

The case was here on a former appeal, *Creighton* v. *Elgin,* 387 Ill. 592. By the decision in that case a decree in favor of the defendants was reversed solely for errors occurring on the trial. The cause was remanded for a new trial. A new trial was had, with the above results. While the facts in the record on the former appeal are somewhat fully set out in the opinion in that case, due to the fact that there is considerable additional evidence in the record before us on the present appeal, it will be necessary to repeat many of those facts in this opinion.

As already observed, three parcels of real estate are involved. These properties, in addition to the legal description of each, are designated in the record as the "home place" consisting of 340 acres of farm land, the "Crews farm" consisting of 160 acres of farm land, and the "Poe lot," being a town lot located in the city of Fairfield. We will so refer to them in this opinion. The issues are such that the case must be considered separately as to each of those properties. We will first consider the case in its relation to the home place.

On February 25, 1918, Judge Jacob R. Creighton executed a warranty deed in which Lucretia E. Creighton, his wife, joined. This deed purported to convey to his two sons, Edward W. Creighton and John M. Creighton, several tracts of land, including the home place. After the deed had been properly signed and acknowledged and a certificate of acknowledgment in proper form attached by the notary, Judge Creighton handed the deed to his wife with the statement, "You take care of this until the boys are home and you can give it to them at that time." The deed was not delivered in Judge Creighton's lifetime. The son John, at the time this deed was executed, was serving overseas in the United States Army. Judge Creighton continued to manage, occupy and use, as his own, the lands described in the deed, until his death in 1920. He left surviving, Lucretia E. Creighton, his widow, his sons Edward and John, and his daughter Mary, (now Mary Elgin,) as his only heirs-at-law. In the meantime, between the time the deed was executed and the date of his death, Judge Creighton sold to various purchasers some of the lands described in the deed, for which he and his wife executed deeds. He also entered into contracts for the sale of certain other tracts which were described in that deed. One or more of these contracts was carried out and performed by the widow after Judge Creighton's death.

Several years prior to the execution of the deed on February 25, 1918, Judge Creighton executed his will in

which he bequeathed and devised all of his property to Lucretia E. Creighton, his wife. After his death, in 1920, this will was admitted to probate by the county court of Wayne county. His estate was administered. Lucretia E. Creighton, his widow, accepted the provisions of the will and took possession of all the property of the testator, including the home place.

The son John, who was one of the grantees named in the deed executed by Judge Creighton and his wife on February 25, 1918, after he returned from service in World War I, obtained a position in Detroit. Sometime during the year 1930, which was some ten years after his father's death, he returned to Wayne county where he managed and operated the properties belonging to his mother, for several years. He died on October 7, 1941. He left no children or descendants of children. He left a will in which he devised and bequeathed all of his property to his widow, the appellee, Madeline M. Creighton. His will was admitted to probate by the county court of Wayne county. The estate was administered and his widow took all his property as sole legatee and devisee.

Some years prior to November, 1935, Lucretia E. Creighton, the widow, Edward W. Creighton, one of the sons, and the daughter, Mary, moved to California. The son John was left in charge of the properties in Wayne county by the mother. Shortly prior to November 20, 1935, Edward wrote a letter to his brother John. This letter is set out in full in the former opinion and its substance is hereinafter more fully referred to. The letter bears no date except "Sunday." Some of the facts stated in that letter were referred to in a letter written by Mary to her brother John, which is dated November 20, 1935. It is obvious these two letters were written near the same time. The letter from Mary is also set out in full in the former opinion, and is discussed somewhat in detail later in this opinion. It will be observed that this letter purports

to "add to" a letter written by the mother to John. The mother's letter is not in the record. Whether John made any reply to these letters the record does not disclose.

On January 13, 1936, the deed executed by Judge Creighton and wife on February 25, 1918, was filed for record in the recorder's office of Wayne county. There is no direct evidence in the record showing by whom said deed was filed for record. Simultaneously with the filing of this deed for record in the office of the recorder of Wayne county, there was also filed for record in that office a deed from Edward W. Creighton, conveying to Mary Creighton, a one-half undivided interest in the home place, which was described in the deed of Judge Creighton and wife, dated February 25, 1918, a deed from Lucretia E. Creighton conveying to Mary Creighton certain town lots in Turney's Second addition to Fairfield, referred to in Edward's letter as the Moore home, a deed from Lucretia E. Creighton to John M. Creighton, conveying the property referred to in Edward's letter as the Kennedy farm, and a deed from Lucretia E. Creighton to Mary Creighton, conveying certain town lots in Bonham's addition to Fairfield. As already observed, these five deeds were filed and recorded simultaneously in the recorder's office of Wayne county. They were entered and numbered on the entry book consecutively in the order above named. The entry book shows that these deeds, after they had been recorded, were all delivered to John M. Creighton, who "called" for them. The record further shows that on December 25, 1935, Lucretia E. Creighton also executed a deed conveying to Mary Creighton the property referred to in Edward's letter as the Durnell property. The deed from Judge Creighton and wife dated February 25, 1918, was in the possession of Madeline M. Creighton, widow of John M. Creighton, at the time of the death of Lucretia E. Creighton, which occurred in 1943, nearly two and a half years after John's death. She was not a competent wit-

ness, of course, to testify as to the possession of the deed prior to the death of Lucretia E. Creighton, for the reason that she was a party to the suit and Mary and Edward were defending as heirs-at-law of their mother. (Ill. Rev. Stat. 1945, chap. 51, par. 2.) The three deeds from Lucretia E. Creighton to Mary Creighton, and also the deed from Lucretia E. Creighton to John M. Creighton, were all dated December 25, 1935. The deed from Edward W. Creighton to Mary Creighton was dated December 28, 1935. These five deeds, however, were all acknowledged on December 28, 1935, in Los Angeles, California, before the same notary.

There is also in the record a document entitled "Agreement," dated December 28, 1935. It recites that it is an agreement between Mary Creighton, Edward Creighton and John Creighton. It further states that said parties are the owners of certain real property which belonged to Lucretia E. Creighton and the deceased father of said parties in his lifetime; that it is the desire of said parties that the income from said real property shall be used to support Lucretia E. Creighton, the mother of the parties to the agreement; that said property be not encumbered or sold, or the income therefrom diminished or destroyed. It recites that in consideration of the mutual promises contained in the agreement, it is stipulated that they will not sell, convey, mortgage or encumber the real estate now owned by them, which formerly belonged to their deceased father, without the written consent of their mother; that during the lifetime of the mother she may collect the income from said property and use the same in such manner and for such purpose as she may deem proper. It is further provided that if the interest of Lucretia E. Creighton in said property is "levied upon, attached, or otherwise applied to payment of any debt owed by her then, upon the happening thereof her right to collect the income from said real property shall thereupon cease and terminate."

This agreement is signed by Mary Creighton and Edward W. Creighton. It was not signed by John Creighton. The signatures of Edward W. Creighton and Mary Creighton to this agreement were acknowledged before the same notary who took the acknowledgment to the five deeds, acknowledged on the same day.

On December 18, 1941, Lucretia E. Creighton executed her last will and testament. The only real estate specifically disposed of by her will was therein described as "my forty acres located in Jasper Township, Illinois, [which is not involved in this suit] and the lot on West Main Street in Fairfield known as the Poe Lot, title of which now stands in the name of John Creighton, or John Creighton, Trustee, but owned by me." By her will she devised this property to Edward. She left as her only heirs-at-law her son Edward and her daughter Mary.

As to the home place, the controversy here is whether the title vested in the sons John and Edward under the deed of Judge Creighton and wife, executed on February 25, 1918, and which was filed for record as above indicated on January 13, 1936, long after Judge Creighton's death, and after Lucretia E. Creighton had become the sole owner of said property under the last will and testament of Judge Creighton. In our former opinion, referring to this deed, we said: "The deed not having been delivered during the lifetime of Judge Creighton, one of the grantors, it was wholly ineffective as to his interest in the property. At the time of his death he was the owner in fee of the property involved. By his will that property passed in fee to his widow. If the deed was subsequently delivered by her for the purpose and with the intent of vesting title in the grantees named in the deed, we know of no valid reason, and counsel have suggested none, why such delivery would not be effective to convey all interest she owned in the property at the time of such delivery."

There is in the record no direct evidence of the delivery of this deed by Lucretia E. Creighton. Direct evidence of the delivery of a deed by the grantor and its acceptance by the grantee is not indispensable to its validity. Like any other fact it may be shown by circumstantial evidence.

No particular act or ceremony is necessary to constitute the delivery of a deed. (*Humphreys* v. *Humphreys,* 300 Ill. 46.) Actual manual delivery and change of possession of a deed are not necessary to constitute effectual delivery. (*Prince* v. *Prince,* 258 Ill. 304.) Whether a deed has been delivered with the intention of vesting title is a question of law and fact, depending upon the circumstances of each case. (*Creighton* v. *Elgin,* 387 Ill. 592; *Stanford* v. *Stanford,* 371 Ill. 211.) Delivery need not be to the grantee in person. It is sufficient if the deed be delivered to a third person for the use of the grantee. (*Reed* v. *Eastin,* 379 Ill. 586; *Hoyt* v. *Northup,* 256 Ill. 604; *Baker* v. *Hall,* 214 Ill. 364; *Clark* v. *Clark,* 183 Ill. 448.) The delivery of a deed to one of several grantees for the benefit of all operates as a delivery to all. (*McClugage* v. *Taylor,* 352 Ill. 550.) The recording of a deed is *prima facie* evidence of its delivery. (*Hathaway* v. *Cook,* 258 Ill. 92; *Ackman* v. *Potter,* 239 Ill. 578; *Clark* v. *Harper,* 215 Ill. 24.) A deed executed, acknowledged and recorded is presumed to have been delivered, and whoever questions the fact of delivery assumes the burden of overcoming such presumption by clear and convincing evidence. (*Campbell* v. *Campbell,* 368 Ill. 202.) Where a deed has been recorded the subsequent conveyance of the title to the property therein described by the grantee is sufficient evidence of the acceptance of the deed by the grantee. *Crow* v. *Crow,* 348 Ill. 241.

Here the controversy is not between the grantor and the grantees concerning the delivery and acceptance of the deed. The attack on such delivery is made by one of the grantees in the deed and by his grantee to whom he con-

veyed all his interest in the property, simultaneously with the recording of the deed under which he claimed the title which he conveyed. The deed under which Edward assumed to have acquired the title and the deed by which he conveyed that title to Mary, were filed for record at the same time. It is not contended that the deed from Edward to Mary was not properly delivered, nor that title did not vest under that deed.

The transaction relating to the delivery of the deed to the recorder for the purpose of having it recorded, and, after it was recorded, its delivery to John M. Creighton, originated in the family conference referred to in the letter from Edward to his brother John, obviously written shortly before November 20, 1935. It appears from that letter that Mrs. Creighton and Edward had become involved financially. A deficiency judgment was threatened in a pending suit to foreclose a mortgage on property in Hollywood, California. Edward, in his letter, anticipated this deficiency might be $3000 or $4000. Edward stated in this letter that the entry of such judgment had been temporarily deferred until February 1, 1936; and that he also owed both the Carmi and Fairfield banks. He was undoubtedly expecting said banks to press for payment of the money which he owed to them. He further stated that he had conferred with their attorney and his mother and sister and as a result of such conference he suggested a plan to defeat the threatened judgments. The plan which he suggested was that inasmuch as the deed executed by Judge Creighton and wife on February 25, 1918, was still in the possession of his mother, that it be recorded, which would vest the title in Edward and John to the home place, which was described in that deed, and which had not been disposed of by the mother up to that time. Then, in order to equalize the property between Edward and John and their sister Mary, he suggested that they give her a mortgage on said property. He suggested that this mortgage

be $8000. He further suggested that "we" should give to their mother "a statement or contract stating she is to receive the income from the property during her lifetime, as this is about all the income she has." In that letter he also asked his brother John to investigate a Federal Home Loan bond owned by his mother, and stated that "if unregistered would take care of itself, but if registered, should be transferred."

On November 20, 1935, Mary wrote the letter to her brother John, in which she stated: "I want you to understand that the mortgage on the farm is only for protection and will not be binding on my part—unless the bank should get the property." It appears from this letter that she was familiar with the facts stated in the letter from Edward to John, already referred to. It clearly appears from both of these letters that Edward and Mary were anticipating a deficiency judgment, either against themselves or their mother, or all of them; that they were anticipating that the two banks named would shortly press their claims against Edward and that they were seeking a way to prevent any judgments rendered against either of them becoming a lien on any property which they owned. His proposed plan contemplated that his mother should convey all property standing in her name. He stated, "That would cover the property except the Kennedy Farm, the Durnell place and the Moore home. My idea she to deed one of these to each of us, you to take first choice Mary second and I will take what is left." Edward, in his letter, suggested that the mortgage which he proposed should be given to Mary "will protect us from my creditors, as I owe both the Carmi and Fairfield banks." With reference to this mortgage, Mary, in her letter stated, "I think I should share in the farm land—although not to the extent of $8000. In fact, I thought $8000 rather high, but Edward did not feel that way about it, as he thought if it were less, it would probably be attached [attacked]." This

shows clearly that they had in mind a fictitious mortgage for the purpose of defrauding creditors. While the record does not show whether John replied to either of these letters, it does show, that on December 28, 1935, Edward, assuming to own a one-half undivided interest in the home place, under the deed from Judge Creighton and wife, dated February 25, 1918, conveyed the same to Mary; that on December 25, 1935, Lucretia E. Creighton executed a deed conveying to Mary the Durnell place, referred to in Edward's letter as one of the properties which he suggested should be conveyed to one of the children by the mother. On the same day the mother executed a deed conveying to Mary the Moore home which was also mentioned in Edward's letter as one of the properties which should be conveyed by his mother to one of the children, and a deed to John conveying to him the Kennedy farm, which was likewise mentioned in Edward's letter as another of the properties which he suggested should be conveyed by his mother to one of the children. Thus, by the execution of these deeds, the plan suggested in Edward's letter was carried out almost to the letter. By these deeds the mother divested herself of most of the remaining property which she took under the will of Judge Creighton.

This is exactly the plan proposed in Edward's letter, except that the Moore place, instead of being conveyed either to him or his brother John, by his mother, was conveyed direct to Mary. Also, instead of carrying out the plan suggested of giving Mary a mortgage, in order to encumber his title against his creditors, he immediately conveyed to her his one-half interest in the home place, which he acquired under the deed of Judge Creighton and wife dated February 25, 1918, upon the delivery of that deed. Obviously, he anticipated that the contemplated judgment referred to in California would be against both him and his mother, or that the banks in Illinois would procure judgments against him, because he simultaneously con-

veyed his interest in the home place to Mary àt the same time the deed was executed by the mother to Mary, conveying to her the Moore home, without the title to the latter passing to him or becoming vested in his name. While the two deeds executed by Lucretia E. Creighton conveying to Mary the Moore place and the other town property, the deed to John for the Kennedy farm, and the deed to Mary for the Durnell place were all dated December 25, 1935, and the deed from Edward conveying to Mary his one-half interest in the home place was dated December 28, 1935, all of these deeds were acknowledged on December 28, 1935, before the same notary. The execution of these deeds constituted a part of the same transaction. They were made for the purpose of carrying out the plan suggested in Edward's letter.

There is no escape from the conclusion that Edward or Mary or Mrs. Creighton, with their knowledge and cooperation, either sent all of the deeds to the recorder direct, or to John, with instructions to file the same for record. When they were recorded, John, either by the direction or with the knowledge and consent of Mrs. Creighton, Edward or Mary, or some or all of them, called at the recorder's office and the deeds were delivered to him as directed by the person by whom they were filed for record. Nor can there be any question on this record that all of those deeds were delivered to the recorder's office and recorded with the intention and for the purpose of vesting the titles thereunder, in the grantees therein named. Neither can there be any question under the most elementary rules of law that such titles did so vest. By reason of the connection of Mary and Edward with the transaction as outlined in their letters, and as carried out by them and Lucretia E. Creighton, and their connection with the filing of the deed of February 25, 1918, executed by Judge Creighton and wife, for record, as shown by the persuasive circumstances appearing in the record, which may well be

regarded as conclusive, Mary and Edward are now estopped to assert that said deed was not delivered for the purpose of vesting title or that title did not vest under it, even though Lucretia E. Creighton was not, in any way, connected with the recording of that deed.

Edward and Mary were interested in getting the title to the property out of Lucretia E. Creighton, as well as out of Edward, for the purpose of defrauding and defeating the creditors of Edward and his mother. Even though it was shown that Mrs. Creighton had no knowledge that the deed was delivered, the result would be the same. This was Edward's scheme and plan to get the title out of his mother to save it from her creditors, and out of his name to save it from his creditors. Mary was a party to the scheme and transaction. A deed made or delivered to defraud creditors is binding on the parties and their privies, as well as on all persons *in pari delicto*. Mary is the grantee of Edward. She is in privity with him and is a party *in pari delicto*.

If appellants' contentions were sustained, the result would be to invalidate the delivery of the deed of February 25, 1918, which was recorded for the purpose of hindering, delaying, or defrauding the creditors of Mrs. Creighton, the grantor. Upon the facts in this case equity will not interpose to restore the property to the grantor or her heirs. Appellants now claim as heirs of Lucretia E. Creighton. Neither she nor her heirs may have the aid of a court of equity to invalidate the delivery of the deed.

The law will not permit a person to deliberately put his property out of his control for a fraudulent purpose or permit those in privity with him to do so, and then assist either through the intervention of a court of equity in regaining the same after such fraudulent purpose has been accomplished. (*Jones v. Jones*, 213 Ill. 228; *Kirkpatrick v. Clark*, 132 Ill. 342.) This rule is applied not only to the parties to such fraudulent transactions, but to all per-

sons in privity with them.   *Rosenbaum* v. *Huebner, 277* Ill. 360.

Edward and Mary actively assisted and participated in a plan to defeat their mother's creditors by recording the deed of February 25, 1918, in order to divest the title of record vested in her by the will of Judge Creighton.   They now claim the property as heirs of Lucretia E. Creighton, alleging that the deed was not delivered and that no title vested under it.   This claim is made by Edward, one of the grantees in the deed, after he has accepted title to a one-half interest in the property, under the deed, the delivery of which he now attacks, claimed to own it, and has conveyed it to his sister.   It is made by Mary after she, with full knowledge of the entire transaction, and as a party to it, accepted the conveyance from Edward to the one-half interest, and treated that interest as her own property for some ten years.

It cannot be said that Mrs. Creighton had no knowledge or part in the transaction by which the deed was placed on record.   This is demonstrated by the fact that in carrying out the plan proposed by Edward, she did, in fact, execute three of the other deeds which were filed for record at the same time, and obviously by the same person or persons, and a fourth deed which was executed at the same time, but filed for record later.   The record, therefore, conclusively shows that she was a party to the transaction, a part of which was the filing of the deed of February 25, 1918, for record, for the purpose of divesting the title out of her name and vesting it in Edward and John, the grantees in that deed.   But if it could be assumed that Mrs. Creighton had no knowledge and no part in the transaction resulting in the recording of the deed, the case is even worse for appellants.   Upon that assumption the facts are that Edward feared a deficiency judgment was about to be entered against his mother, in whom the title to the home place was vested under the will of Judge

Creighton. In order to defraud her creditors, in some manner either he or his sister Mary obtained the deed which was then in his mother's possession. In order to get the record title out of his mother's name they caused the deed to be recorded, thus placing the title beyond the reach of her creditors. Mary was an active participant in the transaction. Thus they became parties to a transaction to defraud the creditors of their mother. Such a transaction, while it was void as to the creditors, is binding on the parties and those in privity with them. It cannot be set aside at the suit of any party connected with or participating in the fraud.

After having provided the scheme and the agency by which the deed was placed on record, they cannot now claim the deed was not delivered and hold the title to the land as the heirs or devisees of their mother. It is equally clear that if Mrs. Creighton delivered the deed for the purpose of divesting the title out of her name and vesting it in John and Edward, for the purpose of placing such property beyond the reach of her creditors, she could not now claim that the deed was not delivered. The same rule applies to her heirs and devisees who now claim the property, and who are in no better position than she would be in. (*Jones* v. *Jones,* 213 Ill. 228; *Kirkpatrick* v. *Clark,* 132 Ill. 342.) All those taking part in a fraudulent transaction will be regarded as participants therein and their rights are subject to the same rule. *Svalina* v. *Saravana,* 341 Ill. 236; *Garlick* v. *Imgruet,* 340 Ill. 136; *Third Nat. Bank* v. *Norris,* 331 Ill. 230; *Rosenbaum* v. *Huebner,* 277 Ill. 360.

Some complaint is made that the court admitted evidence not bearing on the issues properly raised by the pleadings. A careful examination of all the pleadings and the evidence in the case shows that this argument is without merit. The decisive issue was the delivery of the deed and the vesting of title thereunder. The evidence com-

plained of had some bearing on this issue. Necessarily, the evidence bearing on the delivery of the deed under the particular facts in this case took a wide range. So did the conduct of the parties. Due to the death of Lucretia E. Creighton, the appellee was decidedly restricted in presenting her case, due in part to the lack of competent witnesses, but largely to the fact that the transactions which resulted in the recording of the deed were transactions between Lucretia E. Creighton and Mary and Edward.

It is also argued by appellants that after the deed was recorded, John continued to operate the farm for his mother, the same as he had in prior years. After the deed was recorded he could only claim a one-half interest in the farm. His sister Mary owned the other one-half interest. Mary had executed the agreement referred to, which provided that Mrs. Creighton should have the income from the land as long as she lived. True, the copy of this agreement offered in evidence was not signed by John. There is nothing in the agreement, however, to indicate that it was not to be effective unless signed by all three of the children named therein. It was valid as to Mary's one-half interest, although it was signed only by her and Edward. That being true, and the property being owned jointly by Mary and John, as tenants in common, under the agreement Mrs. Creighton was entitled to one half of the income. There are no acts shown to have been done by John which are inconsistent with such joint ownership as tenants in common. As to his own interest in the land, anything done by him in the management and operation of the farm may be reconciled with the fact that he may have believed the agreement was binding on him although he did not sign it, or he may have been willing to observe its provisions even though he was not legally bound to do so. Naturally he would feel some obligations relative to the support of his mother. It may also be true that the agreement was executed by Mary and

Edward, in duplicate; that both copies were sent to John, and that he executed one copy and returned it either to the mother or to Edward or Mary. The record is silent on this question. It may also be noted that the evidence shows that after the death of John, Edward took over the management of the farm. For the year 1942, he rendered an account in detail of such operation to appellee, showing all receipts and expenses. He charged her with one half of the net loss.

From a careful examination and consideration of all the evidence, together with all the contentions made, we are satisfied that the chancellor reached a correct conclusion as to the home place.

This brings us to a consideration of that part of the decree dismissing the counterclaim as to the Crews farm. It was alleged in the counterclaim that the title to that farm was obtained by John M. Creighton in a foreclosure suit; that he forclosed two mortgages on the farm for his mother; that as her agent he purchased the farm at the foreclosure sale and took the certificate in his own name; that at the expiration of the redemption period he also had the master's deed issued in his name. It was alleged that the mortgages foreclosed belonged to Lucretia E. Creighton; that they were foreclosed by John as her agent; that John took title under the foreclosure proceedings as agent of his mother and held the same in trust for her, and upon her death the title thereto vested in Edward and Mary, as her only heirs-at-law. This property was not disposed of by her will. If she, in fact, owned it, it was intestate property and passed to Edward and Mary, as her heirs-at-law.

The facts shown by the record concerning the Crews farm may be briefly stated as follows: On August 20, 1920, this farm was owned by Edward W. Creighton. On that date he borrowed from his mother, Lucretia E. Creighton, the sum of $1200. He executed a note for that

amount, and a mortgage covering the farm. Both the note and mortgage were made to C. W. Creighton, as trustee. On August 29, 1921, he borrowed an additional $1000 from his mother, for which he also gave a note and a mortgage covering the premises, to C. W. Creighton, as trustee. There was also a third mortgage on the property executed by Edward to a Carmi bank.

On August 3, 1936, John addressed a letter to his mother, who was in California. He stated in that letter that he had looked up the mortgages on the Crews farm and suggested that it would be necessary for her to assign them to him so that he could give notice of foreclosure. Charles W. Creighton, who was the trustee named in these two notes and mortgages, and who was the attorney handling Mrs. Creighton's business in Wayne county at that time, testified that Mrs. Creighton came to his office on one occasion and asked him to endorse both of these notes to her son John. He could not give the exact date of this conversation, but stated, as he recalled, the notes were in the possession of Mrs. Creighton when she was in his office at that time. She also mentioned the fact that Edward had given a third mortgage on the land and said, "We have done so much for Edward and nothing for John, I am giving these to John." He further testified that this conversation was some time before the suit was started to foreclose the mortgages. It must have been after John's letter of August 3, 1936, was written. At the time this letter was written, obviously the notes and mortgages were in the possession of Mrs. Creighton in California. When she left C. W. Creighton's office after this conversation, and after the notes had been endorsed by him, she took the notes with her. The witness further testified that some time after this conversation John brought the mortgages to his office and asked him to start foreclosure proceedings. The record shows that the foreclosure suit was filed on April 29, 1937. A decree was entered

on July 14, 1937. The property was sold under the decree. It was bought in by John and the master's deed issued to him at the expiration of the redemption period.

Under this evidence it is clear that Mrs. Creighton, after she received the letter written by John on August 3, 1936, and after she had caused the notes to be endorsed by C. W. Creighton, the payee, delivered them to her son John for the purpose of equalizing advancements she and her husband had made to Edward. This constituted an assignment of the mortgage indebtedness, as well as the mortgages, to John. By such transfer he became the owner. The foreclosure proceedings were commenced by John after he acquired the mortgages and the indebtedness which they secured, in this manner. They were foreclosed by him for his own account and not for his mother. The trial court did not err in finding that these notes and mortgages were given to John M. Creighton by his mother and that she caused them to be assigned to him. The mortgages and the mortgage indebtedness belonged to him at the time the mortgages were foreclosed. He did not hold the title to this property in trust for the use and benefit of his mother, but from the evidence in this case he held it in his own right and for his own use and benefit. The chancellor properly dismissed the counterclaim, as to this property, for want of equity.

The next question necessary to be considered is the cross appeal from that part of the decree on the counterclaim relating to the Poe lot. As we view the record, a mere statement of the facts is sufficient to support that part of the decree. By the counterclaim it was alleged that while the record title to that property was in John M. Creighton, it, in fact, belonged to Edward W. Creighton as devisee under his mother's will. The undisputed facts shown by the record are that on July 25, 1929, Frank Poe, who was then the owner of the property, together with his wife, executed a note to C. W. Creighton, as trustee,

for $600. They also executed a mortgage to C. W. Creighton, as trustee, to secure the payment of this note. C. W. Creighton testified that the note and mortgage were given for money loaned to Poe by Lucretia E. Creighton, who was the beneficial owner of the note and mortgage. This testimony is undisputed. As a matter of fact, an allegation to this effect in the counterclaim is expressly admitted by appellee in her answer to the counterclaim. Nevertheless, she now argues that there is no evidence to show that Lucretia E. Creighton furnished the money for this loan. This argument overlooks entirely the testimony of C. W. Creighton. He was Lucretia Creighton's agent and attorney, and as such, handled her loans. He made loans for her, taking mortgages and notes in his own name as trustee. He also handled her business in collecting interest on loans and foreclosing mortgages, the payment of which was in default. He testified positively that the Poe loan was made through him for Mrs. Creighton; that it was her money; that he collected the interest a number of times and paid it over to her. There is nothing in the record to either dispute or discredit this testimony. It must be accepted as true. There is no evidence in the record which connects John with the transaction in which the loan was made or that he was present or had any interest in the loan. The contention of appellee, cannot, therefore, be sustained.

The record further shows that when the note secured by the Poe mortgage became due, John initiated negotiations with the Poes for the purpose of inducing them to make a deed to the property to avoid foreclosure of the mortgage. As a result such a deed was finally made by which the Poes conveyed the property to John M. Creighton. This deed was made on December 15, 1938. The record further shows that John reported to his mother, in various letters written by him, the progress of his negotiations with the Poes. It further appears that shortly after this deed was made the house on the Poe lot burned and

was practically a total loss. Following this fire John wrote his mother several letters asking her what she desired to have him do about the property and whether it should be repaired or sold. In these letters he referred to the property as belonging to his mother. He submitted to her offers he had from prospective buyers. He asked her to fix a price for which she was willing to sell the property and for advice and directions concerning its repair or disposal. Moreover, on September 20, 1938, he entered into a written contract with his mother concerning the foreclosure of mortgages belonging to her. The contract recited that he was then foreclosing certain mortgages for his mother; that in the course of such foreclosures certain redemption money may be received by him. He agreed that "immediately upon receipt of any sums paid to him as legal holder of any mortgage now being foreclosed on property situated in the State of Illinois, whether said mortgages be held in his name individually, or as trustee, the sums so received will be forthwith delivered to" his mother, and "that said sums belong to and are the property of" his mother, notwithstanding the fact that the legal title thereto was vested in him.

Under the undisputed facts in the case, title to the Poe lot was vested in John as trustee for the use and benefit of his mother. By her will she devised this property to Edward. He is, therefore, the sole beneficial owner, and the court did not err in so decreeing.

Appellants also assigned as error the action of the court in taxing all the costs to Edward and Mary. This assignment has not been argued and must be treated as waived. *Lund* v. *Horner*, 375 Ill. 303; *Littell* v. *City of Peoria*, 374 Ill. 344.

The decree of the circuit court of Wayne county is, in all respects, affirmed.

*Decree affirmed.*